OPINION OF THE COURT
Arnold N. Price, J.
In this CPLR article 78 proceeding, petitioners Thomas Rossi and Gregory A. Papa seek a judgment in the nature of mandamus directing respondents Metropolitan Transportation Authority (hereinafter MTA) and Long Island Railroad (hereinafter LIRR) to establish and implement a no fare pass program for fire marshals employed by the Bureau of Fire Investigation of the Fire Department of the City of New York as required by section 1266 (14) of the Public Authorities Law. Respondents cross-move pursuant to CPLR 7804 (f) to dismiss the petition on the grounds of Statute of Limitations and further assert that it properly implemented the police ride program in accordance with the provisions of section 1266 (14).
On July 26, 1995, section 1266 of the Public Authorities Law was amended to include a new subdivision (14) which required the MTA in consultation with the LIRR to "establish and implement a no fare program for transportation on the Long Island Rail Road for police officers employed by the city of New York, county of Nassau, Nassau county villages and cities, county of Suffolk, Suffolk county villages, the division of state police, the port authority of New York and New Jersey, the Metro-North Commuter Railroad Company, the New York city housing authority and the New York city transit authority. In establishing such program, which has as its goal increased *232 protection and improved safety for its commuters, the authority and the Long Island Rail Road shall, among other things, consider: (a) requiring police officers who ride without cost to register with the Long Island Rail Road as a condition of riding without cost; (b) requiring such officers to indicate during such registration process their regular working hours and the Long Island Rail Road trains that such officers expect to ride; and (c) periodically re-registering and re-validating such officers. The authority and the Long Island Rail Road shall also have the power to consider other matters necessary to carry out the goals and objectives of this section.”
This section became effective immediately "provided, however, that the program shall be implemented on or before the one hundred twentieth day after this act shall have become a law and that a report containing the provisions of the program shall be made to the governor, the senate majority and minority leader, the speaker of the assembly and the assembly minority leader, and the chairman of the senate and assembly transportation committees thirty days prior to implementing the program.” (L 1955, ch 307, § 2.)
On October 19, 1995, the Board of the MTA, acting ex officio by the LIRR, presented the police pass program at a public meeting. A timely report was sent to the appropriate government officials, and the program was officially implemented on November 23, 1995. The LIRR police pass program, as implemented, makes free transportation on its system available on a yearly basis upon application to active duty police officers of the following commands: New York City Police Department, Nassau County Police Department, police department of any Nassau County City or Village, Suffolk County Police Department, New York State Police, Port Authority of New York and New Jersey Police Department, Metro-North Commuter Railroad Police Department, New York City Housing Authority Police Department and New York City Transit Authority Police Department.
Petitioners Thomas Rossi and Gregory A-. Papa are employed as fire marshals by the Bureau of Fire Investigation of the Fire Department of the City of New York. Mr. Rossi and Mr. Papa, as fire marshals, have the status of police officers. (CPL 1.20 [34] [i]; Administrative Code of City of NY § 15-117.) Mr. Papa applied for a monthly pass pursuant to the police pass program on May 29, 1996. The MTA, in a letter dated June 14, 1996, rejected Mr. Papa’s request on the grounds that the program was only available "to active members in good standing of the *233 police departments specifically referenced in the statute. The Program does not apply to individuals not ordinarily thought of as 'police officers,’ such as fire marshals, district attorney investigators and enforcement agents of the State’s Department of Taxation and Finance.”
On August 28, 1996, Mr. Papa wrote to Thomas Prendergast, the president of the LIRE, requesting that New York City Fire Marshals be included in the police ride program. Mr. Prendergast, in a letter dated September 13, 1996, responded by stating that the police ride program was designed to comply with the provisions of section 1266 (14) of the Public Authorities Law, and that "[t]he active police officers included in the program were specifically identified by the State Legislature, and are included in the legislation * * * The enacted legislation identifies certain police departments that fall under the jurisdiction of the law.” The letter then set forth the police departments which the LIRE includes in the program.
Mr. Rossi, while seeking relief, did not make any request to participate in the police pass program. Mr. Rossi commenced an article 78 proceeding on June 26, 1996 in which he seeks a judgment in the nature of mandamus, directing respondents to include fire marshals employed by the City of New York in the LIRR’s police pass program. Gregory A. Papa commenced an identical proceeding on October 11, 1996. Respondents have served their answers and these proceedings were consolidated under index number 13985/96 pursuant to a stipulation which was so ordered by the court on November 26, 1996.
Petitioners assert that this proceeding was timely commenced within four months of respondents’ June 14, 1996 refusal to include fire marshals in its police pass program. Petitioners further assert that respondents’ police pass program fails to comply with the statutory mandate of section 1266 (14) of the Public Authorities Law, as it improperly limits eligible police officers to those employed by certain police departments. Petitioners assert that the statutory language includes all police officers employed by the City of New York and, therefore, includes fire marshals employed by the City of New York. It is further asserted that the inclusion of fire marshals is consistent with the purpose of the statute and that as there are only 238 fire marshals, the potential number of applicants would not have a significant impact on respondents’ operations and revenues.
Respondents, in opposition, cross-move to dismiss the petition on the grounds that it was not timely commenced. It is as *234 serted that the period of limitations began to run from the program’s implementation date of November 23, 1995 and that the guidelines became final and binding on petitioners as of that date. In the alternative, respondents assert that their actions were neither arbitrary nor capricious as New York City Fire Marshals are statutorily excluded from the police pass program. It is asserted that pursuant to section 1266 (14) only police officers of designated commands are eligible to apply for free monthly passes. Respondents thus argue that fire marshals employed by the Bureau of Fire Investigation of the New York City Fire Department are not listed in the police ride law and, therefore, are not included in the LIRR’s program. It is further asserted that if respondents were required to include additional individuals who are police officers as defined by CPL 1.20 (34), it would lead to an unwarranted heavy fiscal burden.
 At the outset, the court finds that as Mr. Rossi did not apply for a police pass, he is not an aggrieved party and, therefore, is not a proper party to this proceeding. Mr. Papa, however, is an aggrieved party and he timely commenced this proceeding on October 11, 1996. It is well settled that article 78 proceedings must be commenced within four months after the determination to be reviewed becomes "final and binding upon the petitioner”. (CPLR 217; New York State Assn. of Counties v Axelrod, 78 NY2d 158, 165, quoting Matter of Village of Westbury v Department of Transp., 75 NY2d 62, 72.) Mr. Papa’s proceeding is timely as it was commenced within four months of respondents’ rejection of his application on June 14, 1996. Contrary to respondents’ assertions, petitioner’s cause of action did not accrue on the date the program was implemented as it did not have an impact on petitioner until his application was rejected. Moreover, the court notes that while respondents implemented the pass program on November 23, 1995 pursuant to the legislative mandate, no passes were actually issued to applicants until after January 1, 1996.
The court finds that respondents’ implementation of the police pass program represents an irrational construction of the governing statute. Section 1266 (14) of the Public Authorities Law states in clear, unequivocal language that respondents are to implement a free pass program "for police officers employed by the City of New York”. The statutory language does not set forth any particular police commands and does not limit such police officers to those employed by the Police Department of the City of New York. CPL 1.20 (34) (i) includes in its definition of police officers "chief and deputy fire *235 marshals, the supervising fire marshals and the fire marshals of the bureau of fire investigation of the New York City fire department”. Fire marshals are also designated as police officers pursuant to section 15-117 of the Administrative Code. Fire marshals carry firearms and have the same power of arrest as members of the New York City Police Department. All police officers in the State of New York derive their official status from the provisions of CPL 1.20 (34).
The Legislature, in enacting section 1266 (14) of the Public Authorities Law, clearly stated that the goal of the police pass program was to provide "increased protection and improved safety” to LIRE passengers. The Legislature thus necessarily determined that the potential increased presence of police officers on the LIRE clearly outweighed respondents’ loss of revenue. Respondents have failed to demonstrate that providing free passes to all eligible police officers employed by the municipalities or public authorities set forth in the statutes would have a negative effect on the expressed statutory goal.
Finally, the court notes that on March 26, 1996, two bills were introduced in the State Assembly which would have amended section 1266 (14). One bill (1995 NY Assembly Bill A 9729-A) proposed adding police officers and criminal investigators employed by Amtrak and peace officers employed by the New York State Division of Parole to the no fare program. A second bill (1995 NY Assembly Bill A 9811) would have eliminated the various employer municipalities and public authorities and would have extended the police ride program to all police officers as defined by CPL 1.20. Both of these bills remained in the Committee on Corporation, Authorities and Commissions, and no new amendments were passed upon by the Legislature. The fact that neither of these bills succeeded, however, does not dictate a contrary result herein. Section 1266 (14), as presently enacted, provides that police officers employed by the City of New York are eligible for free passes. Therefore, as fire marshals are police officers employed by the City of New York, they are also eligible for free passes. The Legislature, in enacting section 1266 (14), could have, but did not, limit the term police officers to those individuals employed by the New York City Police Department, a specific police department.
In view of the forgoing, the within petition is granted to the extent that respondents are directed to include in the police ride program all police officers employed by the City of New York, including the chief and deputy fire marshals, the *236 supervising fire marshal and the fire marshals of the Bureau of Fire Investigation. Respondents’ cross motion to dismiss the petition is denied.